**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JERMAYNE WELCH, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-1045 RLW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Movant Jermayne Welch's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 1). The United States filed a Response in opposition (ECF No. 5), and Movant filed a Reply (ECF No. 7). The Court ordered the United States to file a further response to address Movant's claims of ineffective assistance of counsel and <u>Brady</u>/<u>Giglio</u> prosecutorial misconduct, and it did so on April 20, 2023 (ECF No. 9). Movant was granted until May 11, 2023 to file a reply but he did not file one. This matter is now fully briefed and ready for decision. For the following reasons, Movant's § 2255 Motion will be denied in all respects without an evidentiary hearing.

**I. Procedural Background**

On August 16, 2017, a federal grand jury in the Eastern District of Missouri charged Jermayne Welch in an indictment with possessing a firearm after having been convicted previously of a felony crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1) ("Count One"). <u>See</u> <u>United States v. Jermayne Welch</u>, Case No. 4:17-CR-374 RLW ("Criminal Case") (ECF No. 1).[1]

---

[1]The references in this Memorandum and Order to documents in the Court's electronic case filing system are to the Criminal Case, No. 4:17-CR-374 RLW, except as otherwise stated.

On November 3, 2017, the District Court appointed the Office of the Federal Public Defender for the Eastern District of Missouri to represent Movant. (ECF No. 6). Assistant Federal Public Defender William Marsh entered an appearance for Movant (ECF No. 12). Mr. Marsh filed a Request for Discovery on behalf of Movant (ECF No. 13) and a Motion For Additional Time to Obtain and Review Discovery Materials and to Determine Whether, and/or What Pretrial Motions are to be Filed (ECF No. 16). Subsequently, Mr. Marsh filed four motions to extent the pretrial motions deadline (ECF Nos. 20, 22, 24, 26). On March 20, 2018, Movant filed a written waiver of his right to file pretrial motions (ECF No. 28). On March 29, 2018, Movant appeared before U.S. Magistrate Judge Patricia A. Cohen, was placed under oath, and waived filing of pretrial motions. Judge Cohen accepted the waiver and found it was made voluntarily, knowingly, and with full knowledge of rights regarding pretrial motions.

The case was set for jury trial on May 7, 2018 (ECF No. 30). Movant filed a motion to continue the trial setting for sixty days and a waiver of his Speedy Trial Act rights (ECF Nos. 31, 32) and the Court granted the motion and reset the trial to July 16, 2018 (ECF No. 33). On July 10, 2018, Movant appeared before the Court and pleaded guilty to Count One of the Indictment (ECF No. 35) pursuant to a written Guilty Plea Agreement signed by the parties (ECF No. 36).

The Indictment charged as follows:

**<u>COUNT ONE</u>**

The Grand Jury charges that:

On or about June 9, 2017, in the City of St. Louis, within the Eastern District of Missouri,

**<u>JERMAYNE WELCH</u>**,

the Defendant herein, having been convicted previously in a court of law of one or more crimes punishable by a term of imprisonment exceeding one year, did knowingly and intentionally possess a firearm which previously traveled in interstate or foreign commerce during or prior to being in the Defendant's possession.

In violation of Title 18, United States Code, Section 922(g)(1).

2

(ECF Nos. 1, 2).

Pursuant to the Guilty Plea Agreement (the "Agreement") between the parties, Movant agreed to plead guilty to Count One of the indictment in exchange for the United States' agreement "that no further federal prosecution would be brought in this District relative to [Welch's] violation of federal law, known to the United States at this time, arising out of the events set forth in the indictment." (ECF No. 36, ¶ 2a.)

The Agreement set forth, among other things, each of the elements of the offense to which Movant was pleading guilty, the statutory penalties, anticipated guidelines calculations, and the following statement of facts, which Movant agreed the United States could prove "beyond a reasonable doubt if the case were to go to trial" and "may be considered as relevant conduct pursuant to [U.S.S.G.] Section 1B1.3:"

> On June 9, 2017, while patrolling the 4300 block of Kennerly, located in the City of St. Louis, Missouri, within the Eastern District of Missouri, St. Louis Metropolitan Police officers observed Defendant walking in the middle of the street clenching something in his right hand. Officers drove next to Defendant and asked him to move onto the sidewalk. Defendant appeared startled, dropped a clear plastic baggie containing .16 grams of methadone, 2.22 grams of heroin and .84 grams of cocaine, and ran. The officers chased Defendant giving multiple commands for the defendant to stop running. The defendant failed to comply. Officers tased Defendant causing him to fall and drop the crown royal bag in his hand. Inside the crown royal bag, officers observed a 9-millimeter Smith and Wesson semi-automatic pistol loaded with eight rounds of ammunition.

> An examination of the 9-millimeter Smith and Wesson handgun, bearing serial number HUT1039, was conducted. It was determined that each firearm was manufactured outside the State of Missouri, and, therefore, had been transported across state lines and in interstate commerce prior to or during Defendant's possession of it. Each handgun is a "firearm" as defined under federal law. Prior to June 9, 2017, Defendant was convicted of at least one felony crime punishable by imprisonment for a term exceeding one year under the laws of the State of Missouri. The aforementioned controlled substances were submitted to and analyzed by an expert criminalist with the SLMPD Crime Laboratory. The controlled substances were confirmed to be methadone, a Schedule II controlled substance; heroin a Schedule I controlled substance, and cocaine base a Schedule II controlled substance.

(ECF No. 36 at 3-4).

Pursuant to the Agreement, Movant and the Government each retained the right to appeal all sentencing issues. (<u>Id.</u> ¶ 7(a)(2)). The parties waived all rights to appeal all non-jurisdictional, non-sentencing issues, including but not limited to any issues relating to pretrial motions, discovery, and the guilty plea. (<u>Id.</u> ¶ 7(a)(1). Movant agreed to "waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." (<u>Id.</u> ¶ 7(b)).

Movant, who was under oath, confirmed that he had had enough time to discuss his case with Mr. Marsh, was satisfied with the representation he received from defense counsel, and there was nothing Movant felt that counsel should have done but did not do in representing him. (Plea Tr. 4:23-5:6.) The Court asked Movant questions about the Agreement, and Movant responded that he had signed it, read and discussed it with Mr. Marsh before he signed it, everything in it was true to the best of his knowledge and understanding, and there was nothing in the Agreement he disagreed with or did not understand. (<u>Id.</u> 7:3-22).

The Court reviewed the elements of the charge and Movant stated he understood the elements of the charges against him. (<u>Id.</u> 8:14-9:1) The Court asked the Government's attorney to state what facts the Government would prove beyond a reasonable doubt if the case were to go to trial. The Assistant U.S. Attorney recited the facts, essentially as set forth in the Agreement and quoted above. (<u>Id.</u> 9:9-10:15). When she concluded, the Court asked:

> Q Mr. Welch, did you go over those facts carefully with Mr. Marsh?
>
> A Yes, Your Honor.
>
> Q Is there any disagreement about them?
>
> A No, sir.
>
> Q Did you do the things that were just stated?

4

A Yes, Your Honor.

(Id. 10:16-23.)

The Court directed Movant's attention to the Statutory Penalties portion of the Agreement, which stated

> The Defendant fully understands that the maximum possible penalty provided by law for the crime to which the Defendant is pleading "guilty" is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years.
>
> In certain situations under Title 18, United States Code, Section 924(e), Armed Career Criminal, Defendant may be subject to a mandatory minimum sentence of imprisonment of 15 years and a maximum of life, a fine of not more than $250,000, or both such imprisonment and fine, and a term of supervised release of not more than five years. The Defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with counsel and will not be able to withdraw the "guilty" plea if the Court determines the foregoing statute applies to the Defendant's sentence.

(Id. 10:23-11:15.) The Court asked, "Do you understand, Mr. Welch, these are the statutory penalties you're exposed to for this charge?" Movant responded, "Yes, Your Honor." (Id. 11:16-18.)

The Court then discussed the sentencing guidelines generally, and explained that the guidelines were advisory such that a judge does not always have to sentence a defendant within their recommendation. (Id. 11:19-12:9). The Court asked defense counsel to outline the parties' agreement as to the sentencing guidelines:

> MR. MARSH: Yes, Your Honor. The parties agree that the Base Offense Level is going to be found in Section 2K2.1(a) of the Guidelines. And based on the nature of that guideline, the offense level will depend, among other things, on the nature of the Defendant's criminal history and the characteristics of the firearm. The Base Offense Level may also be determined under Section 4B1.4 if the Defendant is determined to be an Armed Career Criminal. So with that in mind, the parties were unable to agree to a specific Base Offense Level in this case.
>
> If the Court would like me to go on, ---
>
> THE COURT: Oh, that's okay. I mean did you explain this to your client –

5

MR. MARSH: Yes, I did, Your Honor.

THE COURT: -- that it won't be determined until after the Presentence Report?

MR. MARSH: That is correct, Judge. And if you'd like, there's also some specific offense characteristics that comprise part of the agreement; namely, that the Government reserves the right to argue that four levels should be added under 2K2.1(b)(6)(B) based on possessing the firearm in connection with another felony offense.

(Plea Tr. 12:14-13:10.)

The Court explained to Movant that the Probation Office would prepare a Presentence Report that would "have a lot of information about you and your crime. And it will also have a section where the Probation Office will calculate the Sentencing Guidelines and tell us what they think the guideline calculations are." (Id. 13:23-14:3.) The Court informed Movant that he, his attorney, and the Government's attorney would get copies of the Presentence Report before sentencing, both sides would have the right to object if anything in it was wrong, and the Court would not sentence Movant before it reviewed the Presentence Report and heard any objections made to it. (Id. 14:3-9.)

The Court then reviewed with Movant that provisions that he retained his rights to appeal all sentencing issues, and gave up his right to file habeas corpus or post-conviction motion except as to prosecutorial misconduct or ineffective assistance of counsel. Movant stated that he understood what he was giving up. (Id. 14:10-15:23.)

Movant stated he did not have any questions about his rights and that he was entering into the Agreement and the guilty plea voluntarily. (Id. 16:24-17:7). Movant formally entered a plea of guilty. (Id. 17:16-19). At the conclusion of the hearing, the Court accepted the guilty plea, finding Movant was competent to enter the plea; knew his rights, and was entering the plea

voluntarily. The Court also found that the plea had a factual basis that contained each element of the crime to which Movant was pleading guilty. (Id. 17:20-25).

The Court set the case for sentencing on October 10, 2018 (ECF No. 38). The United States Probation Office prepared a Disclosure Presentence Investigation Report ("PSR") (ECF No. 39). Mr. Marsh filed an Objection (ECF No. 40) to paragraph 23 of the PSR, which added four points to Movant's adjusted offense level under United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(b)(6)(B) for possessing a firearm in connection with the felony offense of possession of a controlled substance, and the resulting adjusted and total offense levels and the guidelines range, on the basis that the user quantities of controlled substances Movant possessed at the time of the offense were for his own personal use and were unrelated to his possession of the firearm, which he had for purposes of self-protection only.

Mr. Marsh filed a motion to continue the sentencing hearing for a period of twenty-one days on the basis that "counsel needs additional time to conduct investigation and obtain documents that are relevant to Mr. Welch's sentencing." (ECF No. 41.) The Court granted the motion and continued the sentencing to November 1, 2018 (ECF No. 42). Mr. Marsh filed a sentencing memorandum and request for downward variance (ECF No. 44) in support of a sentence in the range of 37-46 months, arguing that (1) Movant's base offense level was inflated as a result of two convictions that occurred well outside the fifteen-year time frame that rendered them countable for guidelines purposes, but periods of probation fell within the fifteen-year period; and (2) Movant's history and characteristics warranted the lesser sentence.

On October 25, 2018, the Final Presentence Investigation Report ("PSR") was issued by the U.S. Probation Office. (ECF No. 46.) The PSR provided, among other things, that Movant's Base Offense Level was 24 pursuant to U.S.S.G. Section 2K2.1(a)(2) because Movant "possessed a firearm subsequent to sustaining two felony conviction for a crime of violence or

controlled substance offense, Assault Second Degree and Distribution of a Controlled Substance (Id. ¶ 22.) The PSR added four levels to the Base Offense Level pursuant to Section 2K2.1(b)(6) because "the firearm was possessed in connection with the felony offenses of Possession of a Controlled Substance Heroin, Cocaine, Cocaine Base and Methadone and Resisting Arrest. (Id. ¶ 23.) With the deduction of three levels for acceptance of responsibility, Movant's Total Offense Level was calculated to be 25. (Id. ¶ 31.) Movant's Criminal History Score was determined to be 10 based on convictions for Assault Second Degree, Burglary Second Degree and Stealing a Firearm, Distribution of a Controlled Substance, Stealing a Motor Vehicle. (Id. ¶¶ 36, 40, 45, 51, 53.) With a Criminal History Category of V, the PSR determined a sentencing guidelines range of 100 to 120 months imprisonment. (Id. ¶ 87.) The PSR noted that if the four levels had not been added to Movant's Base Offense Level under Section 2K2.1(b)(6), the guidelines range would be 70 to 87 months imprisonment. (Id. ¶ 88.)

The Government filed a motion to continue the sentencing for one week stating, "The government will provide disclosures to the defendant regarding key witnesses in this case this week and understands that defense counsel will need time to review those disclosures with the defendant." (ECF No. 49). The Court granted the motion and reset the sentencing hearing to November 8, 2018 (ECF No. 50).

On November 1, 2018, the Government filed a sealed motion for a protective order for certain disclosures it would make as to "possession of potentially impeaching information related to one or more witnesses in the instant case that is sensitive in nature and which the United States is disclosing to the defense pursuant to its obligations under Giglio v. United States, 405 U.S. 150 (1972)." (ECF No. 51 at 1.) The motion provided specific information about the two officers who arrested Movant: One was under investigation in connection with an off-duty incident and the St. Louis Circuit Attorney's Office had concerns about his credibility; the other had inquired about

obtaining a Schedule II controlled substance (an amphetamine-based ADHD drug) from someone other than a physician, had used it, and was preparing to use additional doses of the drug. (Id. at 1-2). The Court granted the Government's sealed motion for a protective order in a sealed order (ECF No. 52)

The Court had received a pro se letter from Defendant dated October 31, 2018, in which he stated, among other things, "About 4 weeks ago I learned one of the agents on my case was under investigation," and that he would make the Court aware of this at sentencing. The letter also stated that St. Louis Circuit Attorney Kim Gardner had a list of "the tainted cops," and that the police report in his case was false. (ECF No. 57).[2]

Mr. Marsh filed a sealed Sentencing Supplement which stated in part:

> [Defendant] asks that the Court consider a sentence of one year and one day, rather than a sentence in the range of 37-46 months, as previously requested. Mr. Welch's request is based on information disclosed in the sealed motion submitted by the Government on November 1, 2018 (Doc. 51). While Mr. Welch is not attempting to evade responsibility for the crime to which he pleaded guilty, he wants the Court to note that the information contained in the Government's sealed motion would have impacted his decision with respect to pretrial motions had he received it earlier. Mr. Welch believes this factor, along with those outlined in his original sentencing memorandum, justifies a sentence of one year and one day in light of the sentencing factors codified in 18 U.S.C. § 3553(a).

(ECF No. 53 at 1).

At the November 8, 2018 sentencing hearing, the Court heard arguments from counsel on Movant's objection to the four-level increase under U.S.S.G. § 2K2.1(b)(6), and then overruled the objection and the related objection to the guideline range. (Sent. Tr. 3:5-5:21). In mitigation

---

[2]On or around August 28, 2018, the former Circuit Attorney for the City of St. Louis, Ms. Kimberly M. Gardner, delivered to the Metropolitan St. Louis Police Department an "exclusion list" of 28 police officers from whom her office would no longer accept criminal cases, based on questions concerning their credibility. Christine Byers & Joel Currier, *St. Louis Prosecutor Says She Will No Longer Accept Cases from 28 City Police Officers*, St. Louis Post-Dispatch, Aug. 31, 2018; https://www.stltoday.com/news/local/crime-and-courts/st-louis-prosecutor-says-she-will-no-longer-accept-cases-from-28-city-police-officers/article_6d8def16-d08d-5e9a-80ba-f5f5446b7b6a.html (last visited July 5, 2023).

of Movant's sentence, Mr. Marsh argued that Movant's criminal history was overstated based on the age of his prior convictions, pointed out his lack of a recent criminal history, and described the hardships Movant had endured in his life, as support for a sentence in the 37 to 46-month range. Mr. Marsh also argued that the information recently disclosed by the Government about the officers justified an additional downward variance to a sentence of a year and a day. (Id. 7:2-9:24).

The Court asked Movant if he wished to address the Court:

THE DEFENDANT: Yes, I do, Your Honor. I'd like to thank you, first of all, for seeing me today.

And, you know, the circumstances around my priors, I just want you to know: All my priors I went to prison at the same time on. It was the same sentence. So it wasn't like I committed different things and got out and got involved in other things.

I -- I don't know how to go about saying that I didn't do something against a police officer. That's kind of frightening in my book because then I'm sitting – I'm sitting as a convicted felon, trying to fight somebody against the law that I know that I'm going to lose. So in my position, I just wanted to do what was best and what was rational.

A lot of times I -- Mr. Marsh will tell you when this situation first -- when I first met him, I wanted to go to trial. When I met him again, I wanted to go to trial. And, you know, we -- he -- And he's a great lawyer. He did everything he's supposed to do, but I'm being honest with you. Me standing before officers, I'm not going to win that, and I'm smart enough to know that. So I tried to do what was best.

So I just -- I don't understand. I brought it to him up about the different things that I heard about the – about the -- about the officers. He made the detention. That –  That happened but it didn't happen the way that they said it happened. There was a group of us. I was -- I wasn't walking the streets. Nobody's going to walk in a street with a gun in a bag. It was us. We were standing on a porch. There was a group of us. They pulled up like they do in our neighborhoods and jumped out. We ran. I was apprehended, and a gun was placed on me. Evidently they found a gun, and it was placed on me. And I was smart enough to ---

THE COURT: Hold -- Hold on a minute, Mr. Welch. I have a "guilty" plea that you admitted to possessing a gun.

10

THE DEFENDANT: Again, Your Honor, like I said, me -- I was told that I couldn't get a fair trial.

THE COURT: I think that – that's – it's a little bit late -- Hold on. It's a little bit late to be litigating that issue.

THE DEFENDANT: I understand, Your Honor.

THE COURT: The Court has made a finding of fact to accept your guilty plea based on what you stated under oath the last time you were here. So let's talk about going forward. That's done.

THE DEFENDANT: I understand, Your Honor. I'm just saying that me trying to get a -- get a fair trial. I wasn't told that I could get that. So that changes my outlook on the Courts, Your Honor.

THE COURT: Okay.

THE DEFENDANT: And going forward, like I said, I've – I've never been in a gang. I did my time. I've – I've been a positive person. I've been part of Better Family Life. I work for Provident. I've mentored. I've kept employment.

I did go through a traumatic incident that caused me to slip and become a heroin addict, and I'm able to admit that, but I'm not a violent person. I'm not a serious – I'm not a major drug dealer. I don't aspire to be that.

You know, I've lost my mother. I lost my brother. My mother has overcome a lot. My youngest daughter was just abused by her mother's -- one of her mother's family members. This just happened. My oldest daughter is going through a lot of things. So I'm just trying to get you to understand that I'm not – I'm a good person, and I can be productive in society.

(Sent Tr. 10:2-12:15).

The Court varied downward from the advisory guidelines range of 100 to 120 months and sentenced Movant to 75 months imprisonment and a supervised release term of two years. (Id. 14-15).

The next day, Mr. Marsh filed Defendant's Uncontested Motion Pursuant to Fed. R. Crim. P. 33 to Vacate the November 8, 2018 Judgment and Sentence (ECF No. 63). The motion to vacate stated that after Movant was sentenced, the parties "discussed the information that Defendant's attorney brought to the Court's attention on the record at the November 8, 2018

sentencing hearing and informally in chambers before the hearing," and agreed it was in the interest of justice to allow the parties time to engage in further discussion of the issues and for Movant time to explore the facts and develop the legal authority needed to determine whether he would request that the Court allow him to withdraw his guilty plea. (Id. at 1-2). The Court granted the motion to vacate (ECF No. 70).

On December 4, 2018, Mr. Marsh filed Defendant's Motion to Withdraw Guilty Plea Under Rule 11(d)(2)(B) under seal (ECF No. 72). The motion stated that Movant did not want to waive pretrial motions or plead guilty in the case, but the evidence against him involved little more than the testimony of his two arresting officers. Initially, Movant had no external basis to call the officers' credibility into question. As such, Movant decided it was in his best interest to plead guilty with the guideline benefit of acceptance of responsibility. After his plea, however, the Government provided material information that directly negated the credibility of both officers, at least some of which information predated Mr. Welch's plea. Had it been provided earlier, he would not have pleaded guilty. The motion argued::

> Mr. Welch has identified a fair and just reason to withdraw his guilty plea. Only two officers were involved in his apprehension and arrest. Following his change of plea, the Government provided evidence calling each of their credibility into question. At least some of this evidence involves an investigation that predated Mr. Welch's guilty plea. Accordingly, the government was required to disclose that information before Mr. Welch's plea pursuant to its ongoing disclosure duties. See Fed. R. Crim. P. 16; Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972). Had the officer credibility evidence been disclosed in a timely fashion, Mr. Welch would have neither waived his right to file pretrial motions nor his right to trial.
> . . . .
> Mr. Welch entered a plea after this information should have been made available to him—a dramatically different course of action than he would have taken in the face of a full and timely disclosure. Accordingly, his decision to plead guilty was uninformed. To require that he be held to that decision under these circumstances would be manifestly unfair and unjust.

(ECF No. 72 at 4). The motion also noted that Movant asserted his innocence at sentencing.

The Government opposed the motion (ECF No. 74), arguing that Movant failed to present a "fair and just reason for withdrawal of his guilty plea wherein he admitted his commission of the offense under oath and has demonstrated nothing to contradict his guilt." (Id. at 6). It also stated the Government did not learn of the impeaching information until "long after the change of plea." (Id.) The Government also argued that nothing about the information related to either officer negated Movant's guilt and, at most, the new information constituted potential impeachment of the officers. (Id. at 7).

The Court denied Movant's motion to withdraw his plea of guilty, noting that his claim of actual innocence and suggestion of police misconduct was itself insufficient for a defendant to withdraw a guilty plea, as "Defendant knowingly and voluntarily entered his plea of guilty and stated under oath that he committed the acts as described in the plea agreement. His second-guessing now based on potential impeachment evidence related to the police officers' credibility - absent additional convincing evidence of his innocence – is insufficient for the Court to permit him to withdraw his guilty plea." (ECF No. 78 at 5-6.)

On January 11, 2019, Movant filed an appeal. The Government filed two motions to dismiss the appeal and on May 1, 2019, the Eighth Circuit Court of Appeals granted the motions to dismiss. United States v. Welch, No. 19-1161 (8th Cir. 2019). The Eighth Circuit issued its Mandate on May 24, 2019 (ECF No. 88).

On August 7, 2020, Movant filed the instant Motion to Vacate pursuant to 28 U.S.C. § 2255.

## II. Grounds for Relief

The § 2255 Motion asserts four grounds for relief:

(1)     Plea counsel was ineffective for failing to investigate that Movant's criminal history based on his prior state convictions would be used to enhance his criminal history category

under the federal Sentencing Guidelines (ECF No. 1 at 4; Jermayne Welch Affidavit, ECF No. 1-1 at 4 ¶¶ 1-2).[3]

(2)    Plea Counsel was ineffective for failing to explain that under the Guilty Plea Agreement, Movant "waived all his rights to attack his conviction and sentence which was not based on any reduction of the penalty he faced" and "was not aware of the importance of the rights he was waiving until it was to[o] late to withdraw his guilty plea" and, as a result Movant's plea was unknowingly and unintelligently made. (Id. at 5; Welch Aff. at 4-5 ¶¶ 3-4.)

(3)    The appeal waiver should not be upheld as a result of ineffective assistance of counsel, as Movant did not receive any tangible consideration in return for it that further reduced his sentence and was ill advised by counsel, resulting in a miscarriage of justice, and the plea was unknowing and involuntary because it resulted from the Government's failure to timely disclose Brady and Giglio information.[4] (Id. at 7; Welch Aff. at 9.)

(4)    Plea counsel was ineffective for failing to discover the information that the officers who arrested Movant "were unlawfully pursuing these criminal charges, being that both [were] deemed incredible by the state attorneys office. Who would not prosecute any case these officers acquired." (Welch Aff. at 5, ¶¶ 5-6.)

## III. Legal Standards

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Section 2255

---

[3]The page citations to the § 2255 Motion are to the electronic page numbers in the Court's CM/ECF filing system, not to the page number on the filed document.

[4] Movant's Ground Three uses the term "plea waiver," but it is apparent from the context that Movant's ground intended to refer to the appeal waiver contained in the Guilty Plea Agreement.

is not designed to provide a remedy for "all claimed errors in conviction and sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979). Instead, to warrant relief under § 2255, the errors of which the movant complains must amount to a fundamental miscarriage of justice. Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). The Supreme Court has stated that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

To prove ineffective assistance of counsel, a defendant must demonstrate both that (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) he was prejudiced as a result. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. If a defendant can meet the first part of the Strickland test, he must still show that counsel's deficient performance prejudiced him. "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result would have been different." Jackson v. United States, 956 F.3d 1001, 1006 (8th Cir. 2020) (quoted case omitted).

A court may not need to determine whether a movant meets the "performance" prong of the Strickland test. "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" Young v. Bowersox, 161 F.3d 1159, 1160 (8th Cir. 1998) (quoting Strickland, 466 U.S. at 697).

Generally, to establish prejudice where a defendant has entered a guilty plea, "the Movant must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Frausto, 754 F.3d 640, 643 (8th Cir. 2014) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

"'Surmounting Strickland's high bar is never an easy task,' Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has 'special force with respect to

convictions based on guilty pleas.' United States v. Timmreck, 441 U.S. 780, 784 (1979)." Lee v. United States, 582 U.S. 357, 368-69 (2017). "Judges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 369. "While a guilty plea taken in open court is not invulnerable to collateral attack in a post-conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (quoted case omitted).

Here, during the plea hearing Welch stated he was satisfied with his lawyer and that no threats or promises had been made to induce him to plead guilty. Welch also admitted his guilt and volunteered statements to confirm that admission. Welch has a heavy burden to overcome those admissions and show that his plea was involuntary. See Blackledge v. Allison, 431 U.S. 63, 72-74 (1977); Nguyen, 114 F.3d at 703.

"A § 2255 motion 'can be dismissed without a hearing if (1) the [movant]'s allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003) (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)).

**IV. Discussion**

    A. Ground One

In this ground, Movant asserts that his plea counsel was ineffective for failing to investigate and inform Movant that his criminal history based on his prior state convictions would be used to enhance his criminal history category under the federal Sentencing Guidelines. Movant asserts in his Affidavit that if he had been so informed, he "would not have plead[ed] guilty, but

16

instead stood trial unless I felt compel [sic] to with the knowledge of this information exposed to me before hand." (Welch Aff., ECF No. 1-1 at 4, ¶2).

The record shows that at the change of plea hearing, the Court informed Movant in detail about the sentencing options, including the maximum sentence prescribed by law, as required by Federal Rule of Criminal Procedure 11(c)(1), and the possibility that if Movant was found to be an Armed Career Criminal, he would be subject to a mandatory minimum sentence of fifteen years and a maximum of life. The Court stated that Movant's sentence would be affected by the Sentencing Guidelines that will determine a range of jail time, and that there were reasons the Court could impose a higher or lower sentence than the Guidelines recommend. Defense counsel then explained the parties' agreement set forth in the Guilty Plea Agreement: that Movant's offense level would depend on, among other things, the nature of his criminal history and the characteristics of the firearm, or Section 4B1.4 if Movant was determined to be an Armed Career Criminal, and that counsel had explained to Movant this would not be determined until after the presentence report was prepared.

In addition, the Guilty Plea Agreement reserved the parties' rights to challenge, before and at sentencing, the findings in the Presentence Report as to Movant's criminal history and the applicable category, and stated, "The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report." (ECF No. 36 at 6, ¶ 6.d.). The Pretrial Services Report listed a number of Movant's prior arrests and convictions. (ECF No. 9 at 6-8).

Movant's ineffective assistance argument fails because he cannot prove that counsel was objectively unreasonable or that any attorney error prejudiced him. The Sentencing Guidelines do not permit a quick and easy determination of a defendant's sentence. A defendant is not entitled to an accurate prediction of a Guidelines range that has not yet been determined. The law is well established that a federal criminal defendant's right to be informed of the court's sentencing

options extends no further than the provisions of Federal Rule of Criminal Procedure 11(c)(1), which requires the court to inform the defendant of the applicable mandatory minimum and maximum sentences. United States v. Quiroga, 554 F.3d 1150, 1155 (8th Cir. 2009) (collecting cases). "[I]naccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." Id. (citations omitted).

This principle also applies to a claim of ineffective assistance of counsel based on an alleged error by defense counsel in estimating the sentencing range a defendant may receive under the Guidelines. Walker v. United States, 810 F.3d 568, 578 (8th Cir. 2016) (counsel's error about sentencing range or likely punishment does not render plea involuntary where defendant was informed of maximum sentence). Specifically relevant to Movant's claim, the principle also applies to a defense attorney's failure to explain, prior to a guilty plea, that a defendant's criminal history might result in a higher guidelines range. See Thomas v. United States, 27 F.3d 321, 325-26 (8th Cir. 1994) (failure of counsel to inform defendant of the possibility he might be sentenced as a career offender did not establish that the lawyer's "representation fell below an objective standard of reasonableness.").

At Movant's change of plea hearing, the Court advised Movant that he faced a maximum sentence of not more than ten years, but there was a possibility he might be determined to be an armed career criminal subject to a mandatory minimum sentence of fifteen years. Movant testified that he had full knowledge of these possibilities, had discussed them with counsel, and was aware he would not be able to withdraw his plea if the Court were to determine he was an armed career criminal. Under these circumstances, any failure by plea counsel to inform Movant that his state

prior convictions counted as criminal history in federal court did not fall below an objective standard of reasonableness.

With respect to Movant's assertion that plea counsel did not investigate his criminal history, Movant does not dispute his state court criminal history as incorrect or present any evidence that his presentence report would have been different had counsel investigated. Even if an error could be shown, Welch has not shown prejudice. See Champion v. United States, 319 F. App'x 443, 446-47 (8th Cir. 2009) (unpublished per curiam) (stating that even if counsel failed to independently examine the defendant's criminal history, she did not allege the criminal history was inaccurate, and thus could not show resulting prejudice).

In sum, by alleging that counsel failed to predict the application of the guidelines to his case with respect to criminal history, Movant cannot prove that his counsel's performance was objectively unreasonable or outside the normal range of competence. See Thomas, 27 F.3d at 325-26. Under these circumstances, Movant cannot establish that his plea was involuntary or unknowing based on the inaccurate advice of counsel, because Movant was completely informed about his potential sentence before he entered his guilty plea. Movant's plea was knowing and voluntary, and the alleged deficient performance by his counsel (if any) could not have prejudiced him. See Thomas, 27 F.3d at 325-26.

This ground is without merit and will be dismissed.

B. Ground Two – Ineffective Assistance

In Ground Two, Movant asserts that Plea Counsel was ineffective for failing to explain that under the Guilty Plea Agreement, Movant "waived all his rights to attack his conviction and sentence which was not based on any reduction of the penalty he faced." Movant asserts he "was not aware of the importance of the rights he was waiving until it was to[o] late to withdraw his

guilty plea" and, as a result, the plea was unknowingly and unintelligently made. (Id. at 5; Welch Aff. at 4-5 ¶¶ 3-4.)

The "decision to be bound by the provisions of the plea agreement, including the waiver provisions, must be knowing and voluntary." Sun Bear v. United States, 644 F.3d 700, 704-05 (8th Cir. 2011) (en banc) (citing United States v. Morrison, 171 F.3d 567, 568 (8th Cir. 1999)). But, a "waiver of appellate rights can be of great value to an accused as a means of gaining concessions from the government, and thus plea agreements including such waivers are strongly supported by public policy." United States v. Michelsen, 141 F.3d 867, 873 (8th Cir. 1998).

Here, Movant's second ground is belied by the transcript of the plea proceeding. During the change of plea hearing, Movant was informed about the appeal waiver provision of the Guilty Plea Agreement as follows:

> THE COURT: I want you to take a look at Page 7(a)(2).
>
> And I'm going to let you, Mr. Marsh, explain what this means.
>
> MR. MARSH: Yes, Your Honor.
>
> So with respect to the appellate rights as they relate to sentencing issues, the Defendant retains his rights to appeal all sentencing issues, as does the United States. And that was the subject of an amendment to the Plea Agreement made here this morning. It had originally said that the Defendant waives all appellate rights that relate to sentencing other than criminal history. That was amended to say that the Defendant retains all rights as they relate to sentencing.
>
> THE COURT: So that's everything; criminal history, Total Offense Level, Specific Offense.
>
> MR. MARSH: That is -- That is correct, Your Honor. And we apologize for the sloppiness there, but there was an inability to get into the computer to amend it. Accordingly, that is why we have handwriting and initial markings on the document.
>
> THE COURT: No. It's just helpful to the Court that you did, in fact, reach an agreement, so.

MR. MARSH: Yes, Your Honor. This is absolutely the result of -- of negotiation. And both parties agree to retain all rights on both sides as they relate to sentencing issues with respect to appeal.

THE COURT: Is that correct?

MS. WIEMKEN: That is correct, Your Honor.

Q (By The Court) Mr. Welch, you heard that?

[MR. WELCH]: Yes, Your Honor.

[THE COURT]: Okay. Also on Page 7 is Section 7(b). It says you're giving up your right to file a habeas corpus or a post-conviction motion which is a motion where you could come back to me and say you thought your rights had been violated in these proceedings. You're giving up that right unless you later find out something you believe is prosecutorial misconduct or ineffective assistance of counsel. Do you understand what you're giving up here?

[MR. WELCH]: Yes, Your Honor.

(Plea Tr. 14:10-15:23).

In addition, the Guilty Plea Agreement stated in part, "The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742." (ECF No. 36 at 7, ¶ 7.a.). Movant stated under oath that he read and discussed the Guilty Plea Agreement with his attorney prior to signing it, that everything in it was true to the best of his knowledge and understanding, there was nothing in it he disagreed with or didn't understand, and there were no other promises made to him or agreements entered into by him related to his guilty plea that were not written down in the Agreement. (Id. 7:13-8:1). Movant initialed the handwritten changes to the appeal waiver provision in the Agreement. (ECF No. 36 at 7, ¶ 7.a.(2)).

The plea agreement and Movant's testimony at the change of plea hearing show that Movant was informed of his partial waiver of his appeal rights and that he understood the rights he relinquished and those he retained. In addition, the Court specifically addressed the appeal waiver provision and Movant's counsel explained that, as a result of negotiations with the

Government, the Agreement had been modified so that Movant did not waive the right to appeal sentencing issues, including criminal history, Total Offense Level, and Specific Offense Level.[5] Movant indicated he understood this.

Movant argues he "waived all his rights to attack his conviction and sentence which was not based on any reduction of the penalty he faced." First, this argument includes a factual misstatement, as Movant did not waive all of his appeal rights in the Guilty Plea Agreement. In fact, Movant retained the right to appeal all sentencing issues, and to bring a habeas action asserting claims of ineffective assistance of counsel and prosecutorial misconduct. (ECF No. 36 at 7, ¶¶ 7.a.(2); 7.b.).

Second, the record does not support the assertion that Movant received no reduction of the penalty he faced in return for his agreement to partially waive his appeal rights. The plea agreement provided that in return for Movant's plea of guilty—which includes the partial appeal waiver—Movant received at least three benefits. First, the United States agreed not to bring any further federal prosecution relative to Movant's violations of federal law known to the Government at the time of the plea. Second, Movant received a three-level decrease in his offense level for acceptance of responsibility. And third, the parties retained the right to request a sentence above or below the U.S. Sentencing Guidelines range. (Id. ¶¶ 2.a.; 2.b.; 5.b.(1)). Cf. Chesney v. United States, 367 F.3d 1055, 1060 (8th Cir. 2004) (finding counsel was not ineffective for recommending the defendant enter into a sentencing stipulation where he received benefits from it). Further, at the time Movant entered his plea, the Government's evidence against him appeared strong.

---

[5]As previously stated, Movant filed an appeal, but he did not raise any issues on appeal challenging his sentence. Instead, Movant argued the Court abused its discretion when it denied his motion to withdraw his plea of guilty. The Eighth Circuit Court of Appeals dismissed the appeal as barred by the appeal waiver.

Based on a careful review of the entire record, the Court finds that Movant entered into the guilty plea agreement and the partial appeal waiver knowingly and voluntarily. As a result, this ground is without merit and will be dismissed.

    C. <u>Ground Three – Ineffective Assistance and Prosecutorial Misconduct</u>

In Ground Three, Movant asserts that the appeal waiver should not be upheld as a result of ineffective assistance of counsel, as Movant did not receive any tangible consideration in return for it that further reduced his sentence and was ill advised by counsel, resulting in a miscarriage of justice. (ECF No. 1 at 7). Movant also asserts that the appeal waiver "must not be upheld due to the fact that [Movant] suffers from a <u>Brady</u> and <u>Giglio</u> violation as well," and argues that the Government was required to disclose the credibility evidence concerning the arresting officers before he "pursued his decision to plead guilty." (ECF No. 1-1 at 9).

To the extent Ground Three asserts ineffective assistance of counsel, it duplicates Ground Two. For the reasons discussed above with respect to Ground Two, the Court finds that Movant's counsel was not ineffective with respect to advising Movant to enter into the Guilty Plea Agreement or the appeal waiver.

Movant also asserts in Ground Three that his guilty plea was unknowing, involuntary, and resulted in a miscarriage of justice because the Government failed to disclose impeachment information concerning the two officers in his case before he entered the guilty plea.[6]

<u>Brady</u> and its progeny require the government to provide a defendant with exculpatory evidence. The prosecution's failure to provide evidence favorable to an accused "violates due

---

[6]When Movant filed the Uncontested Motion Pursuant to Federal Rule of Criminal Procedure 33 to Vacate the November 8, 2018, Judgment and Sentence (ECF No. 63) in the underlying criminal case, the Court noted that he was "not raising a constitutional challenge to the Government's disclosure of the information concerning the arresting officers." (Mem. and Order of Jan. 14, 2019, Crim. Case ECF No. 78 at 5, n.4). As a result, the Memorandum and Order did not discuss any application of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny. <u>Id.</u> Movant raises such a claim now.

process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. The duty to disclose encompasses impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 (1985), and evidence affecting witness credibility, where the witness's "reliability" is likely "determinative of guilt or innocence[.]" Giglio v. United States, 405 U.S. 150, 154 (1972). The rule includes evidence known only to police investigators and not to the prosecution. Thus, to comply with Brady, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." Kyles v. Whitley, 514 U.S. 419, 433 34 (1995).

To succeed on this claim, Movant bears the burden to show that "that the government suppressed evidence, either willfully or inadvertently; that the evidence was favorable to [him], either because it was exculpatory or impeaching; and that it was material to the outcome at trial." Masten v. United States, 752 F.3d 1142, 1146 (8th Cir. 2014) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999); United States v. Walrath, 324 F.3d 966, 969 (8th Cir. 2003)).

"For evidence to be material, there must be a 'reasonable probability that had it been disclosed, the result of the proceeding would have been different.'" United States v. Garrett, 898 F.3d 811, 816 (8th Cir. 2018) (quoting United States v. Robinson, 809 F.3d 991, 996 (8th Cir. 2016)). "To obtain relief for a Brady violation, a defendant must demonstrate prejudice by showing that 'there is a reasonable probability' that the result of the proceeding would have been different if the suppressed documents had been disclosed to the defense." Pendleton, 832 F.3d at 940 (quoting Strickler v. Greene, 527 U.S. 263, 289 (1999).

The government argues that its alleged actions in this case do not implicate the issues encompassed by Brady and Giglio, and therefore Movant's claim does not present an issue of potential prosecutorial misconduct. The Court agrees. Movant's claim is that the United States

24

was required to disclose credibility evidence concerning the arresting officers before he pleaded guilty, but it failed to do so. The Court finds this claim alleges a failure to disclose impeachment evidence, not exculpatory evidence.

The Supreme Court has held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a guilty plea agreement with a criminal defendant." United States v. Ruiz, 536 U.S. 622, 633 (2002). In Ruiz, the Court explained:

> [I]mpeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ("knowing," "intelligent," and "sufficient[ly] aware"). Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be. But the Constitution does not require the prosecutor to share all useful information with the defendant. Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case"). And the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it.
> . . . .
>
> It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant. The degree of help that impeachment information can provide will depend upon the defendant's own independent knowledge of the prosecution's potential case—a matter that the Constitution does not require prosecutors to disclose.

Ruiz, 536 U.S. at 629. The Supreme Court added that the very due process considerations which led it "to find trial-related rights to exculpatory and impeachment information in Brady and Giglio, argue against the existence of the 'right'" to a pre-plea disclosure of impeachment information. Ruiz, 536 U.S. at 631. Under this precedent, Movant's claim based on an alleged Brady/Giglio violation must fail.

Ground Three will be denied.

D. Ground Four- Ineffective Assistance of Counsel

In Ground Four, Movant asserts that his plea counsel was ineffective for failing to discover the information that Movant's arresting officers "were unlawfully pursuing these criminal charges, being that both [were] deemed incredible by the state attorneys office. Who would not prosecute any case these officers acquired." (Welch Aff. at 5, ¶¶ 5-6.)

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. Even if the record suggests that counsel "could well have made a more thorough investigation . . . in considering claims of ineffective assistance of counsel, [courts] address not what is prudent or appropriate, but only what is constitutionally compelled." Burger v. Kemp, 483 U.S. 776, 794 (1987) (internal quotation marks and quoted case omitted).

Here, Movant does not allege that his plea counsel knew or with reasonable investigation could have learned of the impeachment information concerning the two arresting officers before Movant entered his plea, and the record does not indicate how this would have been possible. Movant entered his guilty plea on July 10, 2018 (ECF No. 35), and the then-St. Louis Circuit Attorney did not publicly announce that she had placed certain St. Louis Metropolitan Police Department officers on an "exclusion list" until late August 2018.

Counsel cannot be held ineffective for failing to discover information that was not within his knowledge, was not publicly available, or that he could not have learned with reasonable investigation. Movant therefore fails to establish that his counsel's conduct "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88.

Ground Four will be denied.

## V.  Conclusion

For the foregoing reasons, the Court concludes that Jermayne Welch's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence should be denied in all respects, and will be dismissed without an evidentiary hearing. Welch's motion for summary judgment and/or default judgment will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Movant Jermayne Welch's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Movant's Motion for Summary Judgment and/or Default Judgment Pursuant to Federal Rule of Civil Procedure 56 (ECF No. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability as to any of the claims raised in Movant's § 2255 Motion.  See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000); Miller-El v. Cockrell, 537 U.S. 322, 342 (2003).

A separate judgment will accompany this Memorandum and Order.

_Ronnie L. White_

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 6th day of July, 2023.

27